## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AARON MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14-CV-00031 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CHIEF NURSING OFFICER CYNTHIA | ) | |
| KIENLEN, DR. MOHAMMED MANSOUR, | ) | |
| NURSE ELIZABETH JEFFERSON, SHERIFF | ) | |
| DURAN, OFFICER LAWRENCE MAJOUSCH, | ) | |
| OFFICER JAROWSKI OR JOHN DOE, | ) | |
| SERGEANT LASHON CRUMP, OFFICER | ) | |
| CRUZ, SERGEANT CRUZ, OFFICER SCOTT | ) | |
| MICHALSKI, OFFICER MAXIMILLIAN | ) | |
| TOLEDO, COMMANDER SHEAHAN, | ) | |
| COMMANDER MUNDT, and COUNTY OF | ) | |
| COOK, ILLINOIS, a local public entity under | ) | |
| the laws of the State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This suit stems from Aaron Miller's ("Miller") pretrial detention in the Cook County

Department of Corrections ("CCDOC") from the time of his arrest until March 14, 2014, when

he was transferred to another facility. (See 6th Am. Compl. ¶ 4, ECF No. 77.) Before the court

is a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all but two of the fifteen

counts pleaded in Miller's sixth amended complaint. Except for Miller's claims against Cook

County ("the County"), the motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Even though the plaintiff's sixth amended complaint is his live pleading, the court has not

passed on the sufficiency of any of Miller's prior complaints. Miller represented himself when

he commenced this action. The court granted him leave to proceed without prepayment of fees,

*see* 28 U.S.C. § 1915(a), and recruited counsel to represent him. (ECF No. 5 at 1.) Though motions to dismiss some of Miller's prior complaints were filed, Miller ultimately amended those complaints with leave of court, mooting the motions. (*E.g.*, ECF Nos. 35–36.) While briefing on the motion to dismiss Miller's fifth amended complaint was ongoing, one of Miller's attorneys withdrew. (ECF No. 65 at 1.) The court recruited new counsel to represent Miller, denied the motion to dismiss as moot, and authorized Miller to file an amended complaint with the assistance of new counsel. (ECF No. 68 at 1–2.)

In his sixth amended complaint (ECF No. 77), which the court will refer to as the complaint for simplicity's sake, Miller names Cook County as a defendant (¶ 18) along with three medical providers (¶¶ 5–7), and twelve individuals who worked at the CCDOC variously as sergeants, commanders, and correctional officers (¶¶ 8–17). Miller dropped the Cook County Sheriff ("the Sheriff") and the Cook County Sheriff's Office as defendants in this complaint; he had named one or both of them in every prior complaint.

Miller sues the individual defendants in their individual capacities. (6th Am. Compl. ¶¶ 5–17.) He names an additional John Doe defendant, "Officer Jarowski or John Doe" ("Jarowski"). (*Id.* at 1.) Despite the efforts of Miller's counsel and defendants' counsel, the intended officer has not been identified or served. (*Id.* at 1 n1.) As a result, the pending motion to dismiss does not address Counts One and Two because they pertain only to Jarowski (Mot. to Dismiss 3, ECF No. 80), and neither does this order.

In his complaint, Miller pleads claims for constitutional violations under 42 U.S.C. § 1983; violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and battery claims under Illinois law for which he invokes this court's supplemental jurisdiction, *see* 28 U.S.C. § 1367(a); 6th Am. Compl. ¶ 2. The constitutional and ADA issues

raised include prison guards' refusal to transport Miller to court because he used a medically prescribed wheelchair, guards' use of excessive force, retaliation, and deliberate indifference by CCDOC medical personnel to Miller's serious medical needs. Because this is a Rule 12(b)(6) motion, the court recites the well-pleaded factual allegations in the complaint in the light most favorable to Miller and accepts them as true. *See, e.g., Manistee Apts., LLC v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016).

Miller suffered multiple gunshot wounds during his arrest. (6th Am. Compl. ¶ 4.) Miller received a prescription from a medical provider authorizing him to use a walker to move short distances and a wheelchair to travel longer distances. (¶ 20.) Miller also had a gastrointestinal tube ("GI tube" or "g-tube") while he was at the Cook County jail. (¶ 53.) Miller has also been diagnosed with epilepsy. (¶ 52.)

> Due to emergency abdominal surgery performed in June 2011, Mr. Miller's abdominal wall has an opening, where his g-tube was inserted until it fell out following his fall in March 2013. Miller has a large incisional ventral hernia and percutaneous fistula communicating with his stomach secondary to his non-healing g-tube site. This results in an open wound which continues to this day to leak fluids. His stomach muscles are detached as a result of earlier surgery dating from his initial incarceration and have not yet been successfully reconnected.

(Compl. ¶ 63.)

## A. Medical Treatment

Physician's orders required Miller's bandages to be changed twice each day. (¶ 89.) Defendant Elizabeth Jefferson ("Jefferson"), a nurse, disregarded those orders and changed Miller's bandages no more than once every two or three days. (¶ 90.) Miller developed infections and sores on an ongoing basis as a result. (¶ 91.) Nurses, including Jefferson, also refused to provide him with a physician-prescribed painkiller for arm pain related to a gunshot wound, prescribed medication for his epilepsy, depression, anxiety, and neck pain. (¶¶ 92–93.)

Defendant Officer Cruz also prevented Miller from obtaining prescribed medication on January 5, 2014. (¶ 94.)

Repeatedly, doctors at Cook County hospital tried to schedule Miller for reconstructive surgery but to no avail. (*See* 6th Am. Compl. ¶¶ 65–67.) Though defendant Dr. Mohammed Mansour ("Mansour") examined Miller approximately fifteen times during the relevant time period (¶ 66), CCDOC officials refused to facilitate Miller's surgery (¶ 67; *see also* ¶¶ 68–69 (alleging CCDOC officials refused to abide by Cook County hospital officials' recommendations for presurgery dietary restrictions)).

**B. Fall From Bunk**

In March 2013, a physician treating Miller for epilepsy had ordered that he sleep only on the lower bunk because of the danger of a seizure. (¶ 52.) Despite knowing of his physician's order, correctional officers, including defendant Duran, ordered Miller to sleep on the top bunk. (¶ 55.) Miller suffered serious injuries, including his GI tube falling out and aggravation of his fistula, when he fell from the top bunk during a seizure on March 24, 2013. (¶¶ 56–57.) Corrections officers at the CCDOC nevertheless continued to require Miller to sleep on the top bunk after he fell. (¶ 58.) He fell twice more. (*Id.*)

**C. Court Appearances**

Two of the defendants, Sheahan and Mundt, refused to take Miller to a scheduled court appearance in a criminal proceeding because he needed to use a wheelchair. (¶¶ 34, 41.) This happened on at least two dates. (¶¶ 34, 35.)

**D. Excessive Force**

Defendant Majousch struck Miller in the stomach during a pat down on July 2, 2013. (¶ 72.) When Miller told Majousch about the condition of his abdomen, Majousch slapped Miller

in the face.  (¶ 73.)  Majousch's supervisor, defendant Crump, sat a few feet away and saw what happened but did not intervene, ignoring Miller's request to file battery charges.  (¶¶ 74–75.) Shortly after the July 2 incident, Miller had diarrhea with blood in his stool.  (¶ 76.)  Blood also leaked from his GI tube site.  (*Id.*)  In retaliation for Miller's grieving the incident, Majousch falsified a disciplinary ticket against Miller, which led to him being placed in administrative segregation.  (*See* 6th Am. Compl. ¶¶ 81–84.)[1]

Miller filed grievances about his medical care in August and October 2013.  (¶ 99, 101.) In retaliation, CCDOC officers pounded on Miller's stomach wound during pat downs and humiliated him.  (¶ 102.)  Miller also links the refusal to arrange his reconstructive surgery to his grievances.  (¶ 100.)

In late 2013, defendant Toledo kicked Miller's walker away from him.  (¶ 46.)  Toledo retaliated against Miller for complaining in February 2012 that Toledo was physically abusing him.  (¶ 46.)  On February 26, 2014, Miller was waiting in "the bullpen" for a scheduled appointment with his surgeon.  (¶ 108.)  Miller overheard someone say that his doctor was ready to see him.  (¶ 109.)  Miller informed Cruz that the surgeon was ready to see him, but Cruz first ignored him and then began hitting Miller on his chest and stomach.  (¶¶ 109–10.)  Cruz and defendant Michalski "then moved Miller to another bullpen and handcuffed him in a torturous[2] way."  (¶ 111.)  Miller asked to use the bathroom; the officers denied his request; and he urinated on himself.  (*Id.*)  Cruz and Michalski took Miller to the bathroom to clean him, called him names, and referred to him as a monkey.  (¶ 112.)

---

[1] Count XII of the Sixth Amended Complaint is titled "Claim Against Crump for Violation of 14th Amendment Due Process Rights."  In his response to the motion to dismiss, plaintiff states that this is a misnomer, and requests leave to correct the title to accurately reflect the defendant against whom the count and prayer for relief are directed – defendant Majousch.  That request is granted.

[2] The complaint contains a spelling mistake of this word as "tortuous" that plaintiff requests leave to correct in his response to the instant motion.  That request is also granted.

## II. RULE 12(b)(6) STANDARD

A rule 12(b)(6) motion "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *accord. Randle v. Bentsen*, 19 F.3d 371,373 (7th Cir. 1994). A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Twombly*, *supra*). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ADA CLAIMS

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: (1) employment, which is covered by Title I of the statute; (2) public services,

programs and activities, which are the subjects of Title II; and (3) public and private lodging, which is covered by Title III." *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 913 (N.D. Ill. 2009) (quoting *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006)). The individual defendants to Miller's ADA claims characterize them as Title II claims and argue that they cannot be sued under Title II in their individual capacities. Miller does not dispute that his claims arise under Title II in his response. Rather, he argues that his ADA claims not be dismissed because he names Cook County as a defendant elsewhere in the complaint.

The individual defendants Miller sues under the ADA are correct. Title II of the ADA declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (West 2017). The ADA defines the term "public entity" as "any department, agency, special purpose district, or other instrumentality of" one. § 1231(a)(1)(A)–(b). Under these definitions, "employees of the Department of Corrections are not amenable to suit under . . . [Title II of] the ADA" in their individual capacities. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (citing *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004) and *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)) (holding prisoner could not bring ADA claims against Illinois Department of Corrections employees in their individual capacities); *see, e.g.*, *Bilik v. Shearing*, Case No. 16-CV-00821-MJR, 2017 WL 325256, at *6 (S.D. Ill. Jan. 23, 2017) (dismissing ADA claims against prison officials in their individual capacity at Rule 12(b)(6) stage and retaining official-capacity claims); *Dennis v. Curran*, No. 16 C 6014, 2017 WL 264497, at *3 (N.D. Ill. Jan. 20, 2017) (citing *Garfield v. Cook Cnty.*, No. 08

C 6657, 2009 WL 4015553, at *2 (N.D. Ill. Nov. 19, 2009)) (other citations omitted) (dismissing ADA claim against corrections officer in his individual capacity).

Accordingly, Miller's ADA claims must be dismissed because he sues CCDOC employees in their individual capacities only. *See Jaros*, 684 F.3d at 670 n.2. As explained in more detail below, the Cook County Sheriff enjoys a separate legal existence from the County. Because Miller's prior complaints named the Sheriff as a defendant, the court dismisses his ADA claim in Count Three without prejudice to its assertion against the proper defendant.

## IV. CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983

Section 1983 provides a remedy where: "(1) there has been a violation of constitutional or other federal rights and (2) those rights were violated by a person acting under color of state law." *Narducci v. Vill. of Bellwood*, 444 F. Supp. 2d 924, 929 (N.D. Ill. 2006) (citing *Hanania v. Loren–Maltese*, 212 F.3d 353, 356 (7th Cir. 2000)); *accord. Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005). The arguments of all defendants except the County and Killian concern the first element. The court addresses the County's argument first but deals with Killian's argument as part of the analysis of the deliberate indifference count against her and Jefferson.

### A. Cook County Is Not a Proper Party

Cook County is the only institutional defendant named in the caption and body of the sixth amended complaint. (*See* ECF No. 77 at 1–3.) Cook County argues that it is not a proper party to the claims as pleaded in Miller's sixth amended complaint. Miller responds that the doctor and nurses he names as individual defendants "are health professionals . . . , so respondeat superior should lie." (Resp. to Mot. to Dismiss 8, ECF No. 84.)

The Supreme Court rejected respondeat superior liability for "municipalities and other local government units" in *Monell*, 436 U.S. at 690–91. Instead, to state a § 1983 claim under the rule announced in *Monell*, a plaintiff must allege "a constitutional injury resulting from a municipal policy, custom, or practice." *Lewis v. Cnty. of Cook*, No. 10 C 1313, 2011 WL 839753, at *13 (N.D. Ill. Feb. 24, 2011). Furthermore, "[e]ven if *respondeat superior* liability were possible, Cook County could not be held liable as the Sheriff's employer, because Illinois sheriffs are independently elected constitutional officers not subject to the control of the county regarding management of the county jail." *Posey v. Pruger*, 762 F. Supp. 2d 1086, 1090 (N.D. Ill. 2011) (citing *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 860 (N.D. Ill. 2010)); *accord. Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) ("The Cook County Jail, and the Cook County Department of Corrections, are solely under the supervision and control of the Sheriff of Cook County.").

Miller's sixth amended complaint does not attempt to plead that any policy or custom of Cook County caused his alleged constitutional deprivations, so the complaint must be dismissed insofar as it brings § 1983 claims against the County. *See, e.g.*, *Johnson v. Sheriff of Cook Cnty.*, No 15 C 741, 2015 WL 1942724, at *1–2 (N.D. Ill. Apr. 24, 2015) (dismissing claims against Cook County Sheriff because complaint failed to allege a custom or policy that was the moving force behind the pretrial detainee's alleged constitutional deprivations); *Posey*, 762 F. Supp. 2d at 1091 (granting Rule 12(b)(6) motion in part and dismissing county in § 1983 action filed by prisoner).

## B. Due Process Principles

Miller premises his § 1983 counts on violations of the Due Process Clause of the Fourteenth Amendment, which declares that no state may "deprive any person of life, liberty, or

property, without due process of law." *See* U.S. Const. amend. XIV § 1. Miller's due process claims can be generally divided into three groups: (1) claims that a defendant refused to take him to scheduled criminal hearings; (2) claims that a defendant used excessive force ("excessive force claims"); and (3) claims that a defendant was deliberately indifferent to Miller's serious medical needs ("deliberate indifference claims"). Defendants repeatedly assert in the instant motion that "it is not clear" or "apparent" how Miller alleges his right to due process was infringed. (*E.g.*, ECF No. 80 at 4, 11.) The court therefore begins by reviewing the governing principles.

The Due Process Clause of the Fourteenth Amendment has procedural and substantive components. *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014) ("there are both procedural and substantive components of the Due Process Clause . . . ."); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1023 (7th Cir. 2000) (contrasting procedural and substantive due process); *Bigby v. City of Chicago*, 766 F.2d 1053, 1058 (7th Cir. 1985) (same). The procedural component "affords state citizens . . . the right to notice and an opportunity to be heard before being deprived of "property" as defined by state law." *Taake v. Cnty. of Monroe*, 530 F.3d 538, 543 (7th Cir. 2008) (citing *Goros v. Cnty. of Cook*, 489 F.3d 857, 859 (7th Cir. 2007)). Substantive due process doctrine, on the other hand, recognizes that in addition to notice and an opportunity to be heard, the Due Process Clause also "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Reno v. Flores*, 507 U.S. 292, 301–302 (1993)) (other citation omitted). In this context, the Supreme Court has "observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.* at 720–21 (internal quotation and citations

omitted).  Today, the concept of substantive due process incorporates most of the protections

afforded by the Bill of Rights, *see McDonald v. City of Chicago*, 561 U.S. 742, 764 & n.12, 767

(2010) (expressly relying on *Glucksberg's* "deeply rooted" substantive due process language

when deciding whether Due Process Clause incorporated Second Amendment rights), but the

Clause also protects fundamental rights "in addition to the specific freedoms protected by the

Bill of Rights."  *Glucksberg*, 521 U.S. at 720; *see also Albright v. Oliver*, 510 U.S. 266, 273

(1994) (plurality opinion) (holding that "where a particular Amendment 'provides an explicit

textual source of constitutional protection' against a particular sort of government behavior, 'that

Amendment, not the more generalized notion of 'substantive due process,' must be the guide for

analyzing these claims'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).  With this

framework in mind, the court turns to the three kinds of due process violations Miller alleges.

**C. Refusals to Take Miller to Criminal Hearings**

Defendants argue that the complaint does not spell out how the alleged refusals to take

Miller to scheduled court dates and failures to advise him of scheduled court dates alleged in

Count Four affected his due process rights.  (Mot. to Dismiss 4–5, ECF No. 80.)  Nor does it

specify what kinds of hearings he missed.  The Sixth Amendment's confrontation clause

guarantees criminal defendants "the right to be present at all critical stages of the criminal

proceedings."  *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004) (citing *Illinois v. Allen*, 397

U.S. 337, 338 (1970) *and Ellsworth v. Levenhagen*, 248 F.3d 634, 640 (7th Cir. 2001)).  Due

process "supplements this right by protecting the defendant's right to be present during some

stages of the trial where the defendant's ability to confront a witness against him is not in

question . . . ."  *Id.* at 940 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)).

Miller explicitly alleges that he "was harmed by being absent from Court because he was unable to adequately defend the charges being brought against him and participate in his defense." (6th Am. Compl. ¶¶ 36, 42.) That allegation adequately alleges a claim that his absences rendered the proceedings fundamentally unfair at the pleading stage. *See Moore*, 368 F.3d at 940; *Ellsworth*, 248 F.3d at 640.

This raises questions the parties have not briefed, however. If this court were to enter a judgment based on a determination that Miller's alleged absences made his criminal proceedings fundamentally unfair, it would be implying the invalidity of his criminal proceedings, as in the habeas corpus petitions attacking state court judgments in *Moore* and *Ellsworth*, *supra*. Miller brings a § 1983 claim for damages, and under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994):

> [A] person who has been convicted of a crime cannot seek damages or other relief under federal law (as in a suit under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) for violation of his rights by officers who participated in the investigation or prosecution of the criminal charge, if "a judgment in favor of the plaintiff [in the civil suit] would necessarily imply the invalidity of his conviction or sentence."

*Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015) (quoting *Heck¸* 512 U.S. at 487) (second alteration in original). The complaint does not disclose what kind of charges Miller faced or what became of them. All the court knows is that Miller was transferred to Stateville Correctional Center in Joliet. (6th Am. Compl. ¶ 4.)

**D. Excessive Force Claims**

Because Miller alleges that he was a pretrial detainee at all relevant times, the Due Process Clause governs his excessive force claims rather than the Eighth Amendment's

prohibition of cruel and unusual punishment.[3] *See Forrest v. Prine*, 620 F.3d 739, 743–44 (7th Cir. 2010) (contrasting when Fourth Amendment applies and holding that Due Process Clause applied to pretrial detainee's excessive force claims). In their motion to dismiss, defendants repeatedly quote and cite a sentence from *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), quoted in *White v. City of Chicago*, 149 F. Supp. 3d 974, 977 (N.D. Ill. 2016), that "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." (Mot. to Dismiss, 4, 6, ECF No. 80.) As the rest of the sentence from which that quotation was lifted makes clear, that standard applies to procedural, rather than to substantive, due process claims. *See White*, 149 F. Supp. 3d at 977–78 ("Outside the context of certain government actions altogether prohibited by the substantive component of the Due Process Clause, . . . ." (citing *Glucksberg*, 521 U.S. at 720)); *see also Zinermon*, 494 U.S. at 115, 125 (characterizing the claim being reviewed as a "§ 1983 procedural due process claim").

A person held as a pretrial detainee is presumed to be innocent, and "[d]ue process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Supreme Court recently (but not as recently as the parties' briefing) held in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) that "a pretrial detainee must show only that the force

---

[3] The Seventh Circuit has more than once explained as follows:

> The scope of an individual's right to be free from punishment—and, derivatively, the basis for an excessive force action brought under § 1983—hinges on his status within the criminal justice system. On one end of the spectrum are sentenced prisoners. The Eighth Amendment protects these individuals only from the infliction of cruel and unusual punishment, which is often defined in the prison context as the unnecessary and wanton infliction of pain. Pretrial detainees, by contrast, have not been convicted or sentenced and thus are not yet punishable under the law.
>
> As such, pretrial detainees couch excessive force claims as violations of their Fourteenth Amendment rights to due process, not infringements on the Eighth Amendment's ban on cruel and unusual punishment.

*Forrest*, 620 F.3d at 744 (quoting *Lewis*, 581 F.3d at 473).

purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473; *see id.* at 2473–74 (elaborating on this standard and identifying relevant considerations for objective inquiry). The Seventh Circuit has confirmed that *Kingsley* holds that "the treatment of a pretrial prisoner is governed by the substantive standards of the Due Process Clause." *Werner v. Wall*, 836 F.3d 751, 761 (7th Cir. 2016); *see Whitley v. Albers*, 475 U.S. 312, 326–27 (citing *Youngberg v. Romeo*, 457 U.S. 307, 309 (1982)) (holding prisoner's "substantive rights under the Due Process Clause" provided independent basis for affirming Eighth Amendment excessive force decision); *Davis v. Wessel*, 792 F.3d 793, 804–05 (7th Cir. 2015) (characterizing pretrial detainee's claim under *Bell* as a "substantive due process" claim and contrasting standard with Eighth Amendment standard).

After *Kingsley*, defendants' attempts to apply procedural due process and Eighth Amendment standards to Miller's excessive force claims fail. (*See* Mot. to Dismiss 5–6 (citing *White* as authority for dismissing excessive force claim against officer alleged to have kicked away Miller's walker).) Miller does not allege that he should have received a hearing (or some other chance to test the facts) before officers slapped him, kicked his walker out from under him, or struck him repeatedly as he sat in his wheelchair. He claims those things should not have happened with or without notice and a hearing.

Regarding Count Fifteen, Sergeant Cruz argues that the complaint needs to allege more than that Cruz starting hitting Miller after Miller tried to get his attention while the two waited for a surgeon; he must "explain[ ] the type of contact Plaintiff is describing . . . particularly as to whether such contact was severe enough to cause Plaintiff injury." (Mot. to Dismiss 15.) Defendants cite no authority for that proposition, and the parties have not briefed the effect of *Kingsley* on what must be alleged to state an excessive force claim. Under the objective standard

14

that applies in Fourth Amendment excessive force cases, "[a]lthough injury is a relevant factor in determining whether an officer used excessive force, an excessive force claim does not require any particular degree of injury." *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (collecting and quoting cases). Rather than attempt to determine this issue without the benefit of any briefing, the court will deny defendants' motion to dismiss Count Fifteen without prejudice.

**E. Deliberate Indifference Claims**

"The Due Process Clause of the Fourteenth Amendment prohibits 'deliberate indifference to the serious medical needs of pretrial detainees.'"[4] *Pittman ex rel. Hamilton v. Cnty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014) (quoting *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir. 1991)); *see also Treadwell v. McHenry Cnty.*, 193 F. Supp. 3d 900, 906 (N.D. Ill. 2016) ("'[D]eliberate indifference to [the] serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain' such that a prisoner may bring a cause of action against a prison official." (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)) (alterations in original)). To show deliberate indifference, the plaintiff "must show that his medical condition was objectively serious." *Pittman*, 746 F.3d at 775. The plaintiff must also make a subjective showing. *See id.* The "official must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and the official 'must also draw the

---

[4] Courts nevertheless often look to Eighth Amendment standards in cases involving the treatment of pretrial detainees. *See Werner v. Wall*, 836 F. 3d 751, 759 (7th Cir. 2016) ("For a long time, we have recognized that the treatment of a detained person not serving a sentence of incarceration is governed by the Due Process Clause, but we often have borrowed Eighth Amendment standards as a rule of decision.") (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012)) *and Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). That is because "the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners, and the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees." *Id.* at 761 n.21 (citing *Rice*, 675 F.3d at 664). The parties do not discuss how, if at all, the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, affects the Due Process analysis here, and the court does pass upon that question. *See Werner*, 836 F.3d at 761.

inference.'" *Pittman*, 746 F.3d at 776 (quoting *Higgins v. Corr. Med. Servs. of Ill., Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *see Farmer v. Brennan*, 511 U.S. 825, 837, (1994). Showing that a prison official was negligent does not suffice: "Deliberate indifference is not medical malpractice." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (quoting *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013)). "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.* (citing *Farmer*, 511 U.S. at 836–38). With this framework in mind, the court to Miller's deliberate indifference claims.

1. The Doctor (Count Nine)

In Count Nine, Miller claims that Mansour was deliberately indifferent to his serious medical needs because he did not facilitate reconstructive surgery for Miller, despite seeing him fifteen times during the relevant time period and despite the fact that doctors at Cook County hospital attempted to schedule surgery for Miller. (*See* 6th Am. Compl. ¶¶ 62–70.) Mansour does not argue that Miller's condition was anything but objectively serious. Instead, Mansour argues that Miller pled himself out of court by alleging that Mansour saw him fifteen times, showing that Mansour was providing "consistent medical treatment." (Mot. to Dismiss 9–10.) Miller did not plead himself out of court by alleging how often Mansour saw him. *See Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) ("[I]f a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court." (citing *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 78 (7th Cir. 1992)) (other citations omitted)). In the first place, Miller alleges only the number of visits, fifteen, not their frequency or distribution over time. That is, he does not plead how close together his visits were. Suppose "the relevant time period" for the visits (the complaint does not say how long) lasted six months.

The first ten visits might have all occurred in the first month with Mansour seeing Miller once each subsequent month. Mansour may also have seen Miller every other week or so. Or Mansour might have seen Miller three times a week for five weeks and then not at all. The inferences must be drawn in Miller's favor at this stage.

Moreover, consistency of care does not alone satisfy the deliberate indifference standard. While providing consistent medical treatment is to be encouraged, care can be both inadequate and regularly delivered, though the frequency of care is a factor to be considered when evaluating the subjective component of the deliberate indifference test. *See Roe v. Elyea*, 631 F.3d 843, 856–58 (7th Cir. 2011) ("a successful plaintiff need not 'show that he was literally ignored' in his demands for medical treatment, and a defendant's showing that a plaintiff received '*some*' treatment does not resolve the issue conclusively if the treatment was 'blatantly inappropriate.'" (quoting *Greeno v. Daley*, 414 F.3d 645, 653-54 (7th Cir. 2005)); *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010) ("Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment." (citing *Estelle*, 429 U.S. at 104 & n. 10)). Thus, the allegation that Mansour saw Miller fifteen times does not, in and of itself, plead Miller's deliberate indifference claim out of court. *See Gil v. Reed,* 381 F.3d 649, 663–63 (7th Cir. 2004) (holding summary judgment should have been denied where evidence existed that doctor provided consistent course of treatment but did not follow specialist's advice); *Toombs v. Mitcheff*, Case No. 1:14-CV-480-TWP-DKL, 2016 WL 67296, at *4–5 (S.D. Ind. Jan. 4, 2016) (denying summary judgment even though record showed that doctor provided "consistent care" over fourteen months in which plaintiff complained of abdominal pain because reasonable jury could have found that fourteen months of

"watchful waiting" was too long and prisoner ultimately had surgery to remove his gallbladder); *but see Sutton v. Larson*, Case No. 12-CV-01241, 2015 WL 1577686, at \*2 (S.D. Ill. Apr. 2, 2015) (granting summary judgment for doctor, noting that he provided "consistent care" for prisoner's acid reflux, and concluding that failing to prescribe medication for several weeks did not amount to deliberate indifference).

Without citing legal authority, Mansour also argues that Miller must plead additional facts showing that he had final responsibility for scheduling Miller's surgery and that he thwarted the efforts of the Cook County hospital's surgeons to schedule surgery for Miller. (Mot. to Dismiss 10.)  The web of responsibilities within the CCDOC may ultimately prove important to evaluating the subjective element of this claim.  *See Riley v. Kolitwenzew,* 640 F. App'x 505, 507–09 (7th Cir. 2016) (reviewing summary judgment in favor of assistant chief of corrections at federal prison and considering deliberate indifference claims in light of medical department's recommendation for surgery and need to obtain approval from the U.S. Marshal). But the allegation that a prison official was "involved directly in the choice to stall necessary surgery and prolong [the detainee]'s pain is enough to state a claim."  *Heard v. Tilden*, 809 F.3d 974, 981 (7th Cir. 2016) (per curiam) (citing *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012)) (collecting other authority).  Mansour's personal involvement and authority to at least recommend that Miller receive surgery can be inferred from Miller's allegation that Mansour was aware of the recommendations of Miller's doctors at the Cook County hospital, knew Miller still had a bullet lodged in his stomach, but "the officers at Cook County Jail, including attending physician Mansour, refused to facilitate the medically necessary surgery to reconstruct Miller's abdomen."  (6th Am. Compl. ¶ 67; *see also id.* ¶¶ 66–68.)  Therefore, Miller has stated a deliberate indifference claim against Mansour.

2. Nurses (Count Thirteen)[5]

In Count Thirteen, Miller alleges that defendant Jefferson, a prison nurse, defied a doctor's orders to change his bandages daily and instead changed them "once every 2 to 3 days," even though she knew of the risk that the wound in Miller's abdomen could become infected and other complications could develop. (6th Am. Compl. ¶ 90.) Infections and sores plagued Miller as a result. (*Id.* ¶ 91.) Jefferson also allegedly refused to give Miller prescribed medications for his epilepsy, neck pain, back pain, and to treat pain for a gunshot wound to his right arm. (*See id.* ¶¶ 92–93, 95.) Miller repeatedly reported Jefferson's conduct to her supervisor, defendant Kienlen, but Kienlen did nothing, though she knew of the risks. (*Id.* ¶ 95.)

The defendant nurses argue, in conclusory fashion, that the conduct pleaded in Miller's complaint amounts to no more than negligence, which is not actionable on a deliberate indifference claim. *See, e.g.*, *Petties*, *supra*, 836 F.3d at 728. A prison nurse's refusal to dispense medication to treat pain prescribed by a physician can be actionable as deliberate indifference. *See Walker v. Benjamin*, 293 F.3d 1030, 1039–41 (7th Cir. 2002) (discussing *Estelle*, *supra*, and holding not only that fact issue precluded summary judgment but also that qualified immunity did not attach because "[t]here is no question here that at the time Nurse Dunbar and Dr. Benjamin refused to give Walker his prescribed pain medication (again, according to his version of events), such an action would give rise to liability under section 1983"). The gravamen of the allegations against the nurses is that they knowingly failed to follow the course of treatment prescribed by Miller's physicians, i.e., that their actions were "not actually based on a medical judgment." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816,

---

[5] Miller also names a corrections officer, defendant "Officer Cruz," in Count Thirteen, but the motion to dismiss does not address the claims against him because he has yet to be served. (ECF No. 80 at 12.) The defendant named as "Officer Cruz" in Count XIII does not appear to be the same person as the defendant named "Sergeant Cruz" in Count XV.

832 (7th Cir. 2009) (summary judgment opinion: holding that deliberate indifference can be inferred from fact that medical provider's care went "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment" (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008))). Viewed in the light most favorable to him, Miller's allegations that Jefferson and Kienlen refused to dispense prescribed pain medication and that Jefferson changed his bandages less frequently than his doctors prescribed —all causing him pain, sores, and infection, which he alleges, and it is reasonable to infer, were painful—state deliberate indifference claims. *See Walker*, 293 F.3d at 1040–41 (holding that doctor and nurse's explanation for refusing treatment, *viz.* that they believed prisoner was malingering, was a fact question for the jury).

Jefferson also claims the complaint should be dismissed for failing to plead facts showing that Miller's "care was solely [her] responsibility." (Mot. to Dismiss 12.) The Seventh Circuit has "explicitly rejected the notion . . . that nurses cannot, as a matter of law, be held liable for Eighth Amendment violations where they allegedly lacked authority to provide particular forms of medical care to inmates." *Perez v. Fenoglio*, 792 F.3d 768, 781 (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)). "Nurses, like physicians, may thus be held liable for deliberate indifference where they knowingly disregard a risk to an inmate's health." *Id.* at 779 (citation omitted). Questions of a nurse's authority generally "are questions of fact that cannot be resolved at this stage in the litigation," and so dismissal of the complaint against Jefferson is not warranted. *Id.* at 780 (holding complaint stated a deliberate indifference claim against prison nurse).

Kienlen, the former chief nurse, takes a different tack. She argues that Miller's allegation that he "repeatedly reported" Jefferson's failure to follow his doctor's orders to Kienlen is

insufficient to allege her personal involvement.  (6th Am. Compl. ¶ 95.).  "It is well established that "for constitutional violations under § 1983 a government official is only liable for his or her own misconduct."  *Perez*, 792 F.3d at 781 (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)) (alterations omitted); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).

Kienlen's supervisory position alone does not make her liable for Jefferson's conduct under § 1983.  The Supreme Court held in *Iqbal* that a supervisor's mere "knowledge of a subordinate's misconduct is not enough for [§ 1983] liability."  *Vance v. Rumsfeld*, 701 F.3d 193, 203, 605 (7th Cir. 2012).  Indeed, the Court in *Iqbal* observed that the phrase "supervisory liability" is a misnomer in § 1983 suits in which the respondeat superior doctrine does not apply.  *Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").  Thus, Miller's allegation that Kienlen served as the CCDOC's chief nursing supervisor and that her responsibilities included supervising and overseeing nursing care (6th Am. Compl. ¶ 5) does not by itself allege her personal involvement with Jefferson's provision of medical care.  *See Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) ("Dr. Webster cannot be held liable merely due to his supervisory capacity as clinical director."); *Velazquez v. Williams*, No. 14 CV 9121, 2015 WL 4036157, at *2 (N.D. Ill. June 30, 2015) (dismissing claim against medical director of Illinois' Stateville prison based on allegations of his role alone).

The complaint nevertheless states a plausible claim of deliberate indifference against Kienlen.  To be liable under § 1983 in her individual capacity, "the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'"  *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)); *see also Arnett*, 658 F.3d at 755 (citing

*Vance*, 653 F.3d at 599 & n.5) (other citation omitted) (explaining that *Iqbal* did not change this standard).  Miller alleges that he reported to Kienlen that Jefferson was not changing his wound dressings daily, irrigating his wound, and dispensing prescribed medication as his doctor recommended and that Kienlen knew about the risks Jefferson's conduct posed.  (*See* 6th Am. Compl. ¶¶ 91–93, 95.)  The complaint does not spell out how Kienlen knew of the risks, but it does not have to; that is what discovery is for.  *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) (reversing dismissal of complaint against medical director because, although complaint said only that director knew of plaintiff's eye condition without saying how, "intent may be pleaded generally (which is to say, in a conclusory fashion), [so] the lack of detail does not permit dismissal").  In the face of Miller's reports, Kienlen did nothing according to the complaint.  (6th Am. Compl. ¶ 95.)  Viewed in the light most favorable to Miller, these allegations state a plausible claim that Kienlen condoned, approved, or turned a blind eye to Jefferson's alleged conduct.  *See McGowan v. Hulick*, 612 F.3d 636, 640–41 (7th Cir. 2010) (holding complaint drafted by *pro se* prisoner stated claim against supervising dental director who allegedly delayed care for two months after subordinate recommended care); *Burks*, 555 F.3d at 594; *Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) (holding complaint stated claim against medical director because prisoner alleged he personally informed director of his request for treatment and director refused request).

3. Count Eight: Allegations That Prison Guard Disregarded Doctor's Order That Miller Sleep on Top Bunk State a Deliberate Indifference Claim

Also, Count Eight, which alleges that defendant Duran, a prison guard, knowingly violated doctor's orders and required Miller to sleep on the top bunk, states a claim.  Duran claims that Count Eight does not identify the constitutional right violated.  (Mot to Dismiss 7.)

The Seventh Circuit has recognized, however, that "a risk an inmate will fall attempting to climb into a high bunk due to an acute medical condition" is serious enough to satisfy the objective component of the deliberate indifference standard. *Buford v. Obaisi*, No. 14 C 3931, 2016 WL 4245513, at *5 (N.D. Ill. Aug. 11, 2016) (citing *Bolling v. Carter*, 819 F.3d 1035 (7th Cir. 2016) *and Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688 (7th Cir. 2013)). In *Bolling*, for instance, a doctor at the Cook County Jail determined that the plaintiff, a pretrial detainee, needed to sleep on the lower bunk. 819 F.3d at 1036. After falling and hurting his back, the detainee sued six correctional officers whom he alleged, and the summary judgment record permitted the jury to find, forced him to sleep on the top bunk anyway. *See id.* at 1035–36. The Seventh Circuit held that a genuine issue of material fact existed and sent the case back to the district court for a trial on the plaintiff's deliberate indifference claim. *See id.* at 1036.

Viewed in a light favorable to him, Miller's allegations suffice to state claim under *Bolling*. Miller alleges that Duran and other, unspecified jail officials disregarded a doctor's order that he sleep in the bottom bunk. (6th Am. Compl. ¶ 55.) The doctor issued that order after making a medical judgment that Miller's serious condition, epilepsy, created an unacceptable risk of falling (*see* 6th Am. Compl. ¶¶ 55–57) and as in *Bolling*, the doctor's concerns proved to be legitimate; Miller fell from the top bunk during a seizure. (*See id.* ¶ 56.) Those allegations give fair notice of Miller's claim of deliberate indifference to a serious medical need under the Due Process Clause to the officers who allegedly disregarded the doctor's order. *See Bolling*, 819 F.3d at 1036; *Buford*, 2016 WL 4245513, at *5 (denying summary judgment on prisoner's deliberate indifference claims against prison officials' based on officials' "assigning, placing, and leaving him to a ladderless top bunk when he suffered from ongoing Achilles tendon pain; ambulated with crutches; informed officers he could not access the top bunk; was

consistently provided a low-bunk permit by the medical unit . . . ; and fell attempting to access the top bunk within hours of assignment to it").

That the complaint states a claim does not, of course, mean that Miller will ultimately prevail after discovery. The court does not consider the merits of Miller's claims today, only the complaint's sufficiency. Under the subjective prong of the deliberate indifference test, an official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Withers*, 710 F.3d at 690-91 (discussing issues that might be raised at trial under subjective prong of deliberate indifference claim).

## IV. BATTERY CLAIMS

As for Miller's battery claims, defendants' only argument against them is that battery claims generally arise under state law. *See Cervantes v. Skipper*, No. 95 C 7721, 1996 WL 351192, at *3 (N.D. Ill. June 21, 1996) (noting that battery claims, brought in this case against arresting officers, are "traditionally claims which arise under state law rather than federal law"). Fair enough. The complaint invokes this court's supplemental jurisdiction over state law claims that are part of the same case or controversy. *See* 28 U.S.C. § 1367(a); (6th Am. Compl. ¶ 2.) In *Cervantes*, the court dismissed an allegation that "[a]fter the stop, Defendants, without probable cause and or reasonable suspicion and/or lawful justification, assaulted and battered the Plaintiff" as insufficiently specific to state either a battery claim or excessive force claim because it did not "set forth what happened during the arrest, how the Plaintiff was assaulted and battered, and what his damages were as a result." *Cervantes*, 2016 WL 351192, at *3.

Miller's complaint does all of the things the *Cervantes* complaint did not. Battery is "the unauthorized touching of another's person" under Illinois law. *Benitez v. Am. Standard Circuits,*

*Inc.*, 678 F. Supp. 745, 767 (N.D. Ill. 2010) (citing *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1043–44 (Ill. App. Ct. 2007)). To state a battery claim, Miller "must allege that the defendant intended to cause a harmful contact, that harmful contact resulted and that the plaintiff did not consent." *Happel v. Wal-Mart Stores, Inc.*, 319 F. Supp. 2d 883, 885 (citing *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995)). Miller alleges in Count Five that he fell because defendant Toledo kicked his walker (6th Am. Compl. ¶ 46) and that he "was physically harmed . . . and suffered pain, humiliation and embarrassment as a result" (*id.* ¶ 48). Toledo can be liable for battery even if he only kicked Miller's walker and never touched him, for "(I)t is enough that the defendant sets a force in motion which ultimately produces the result." *Mink v. Univ. of Chi.*, 460 F. Supp. 713, 717–18 (N.D. Ill. 1978) (quoting William L. Prosser, *Law of Torts* § 9, at 35 (4th ed. 1971)) (alteration in original). In Count Ten, Miller pleads that defendant Majousch struck him in his abdomen on July 2, 2013, causing him to experience pain, diarrhea, and blood in his stool. (6th Am. Compl. ¶¶ 72, 76.) The complaint also states that Majousch slapped Miller in the face when he asked Majousch not to hit him in the abdomen. (*Id.* ¶ 73.) These allegations are more than labels and conclusions, and they state claims for battery. *See Stewart v. Roe*, 776 F. Supp. 1304, 1307–08 (N.D. Ill. 1991) (holding complaint stated battery claim where it also stated excessive force claim).

## VI. CONCLUSION

For the reasons given above, the motion to dismiss Miller's sixth amendment complaint (ECF No. 80) is granted in part, denied in part, and denied in part without prejudice as to Count Fifteen. Plaintiff's claims against Cook County alleged in the sixth amended complaint are dismissed. The ADA claims alleged in Count Three are dismissed as well.

Because of the unusual complexities of this case, the court exercises its discretion to recruit new counsel to represent Miller with thanks to Mr. Tasch for his ardent efforts on Miller's behalf.  A status conference is set for April 28, 2017, at 9:30 a.m.  Also, to conform the docket to the live complaint, the clerk is directed to terminate the following four parties: defendant Officer Jalowski; defendant Samuel L. Clemons, Commander; defendant Cook County Department of Corrections; and defendant Tom Dart, Sheriff.

Date:  March 10, 2017

                                               _____/s/_____
                                               Joan B. Gottschall
                                               United States District Judge